***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments of the parties before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby AFFIRMS and MODIFIES the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before Deputy Commissioner Hall as:
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction over the parties and over the subject matter. The parties to this action are subject to the Act, and plaintiff was an employee of Watts Industries, Inc. on September 4, 2001.
2. On September 4, 2001, defendants were insured by Zurich American Insurance Company.
3. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
4. The following exhibits were stipulated into the evidence of record at the hearing before Deputy Commissioner Hall:
Stipulated Exhibit 1-Pretrial Agreement
Stipulated Exhibit 2-plaintiff's medical records
Stipulated Exhibit 3-plaintiff's attendance and time record
5. The issues before the Commission are whether plaintiff sustained an injury by accident and/or a specific traumatic incident arising out of and in the course and scope of her employment with defendants; if so, to what benefits is she entitled; does N.C. Gen. Stat. § 97-22 bar plaintiff from receiving compensation?
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 26 years old and lived in Bostic, North Carolina. Plaintiff is a high school graduate. Plaintiff was hired by defendants in April 2001 to work as a machine operator on the tubular assembly line.
2. Plaintiff testified that she was doing a utility job on September 4, 2001 and that her duties included driving a forklift, filling bins with metal tubular parts at 12 stations, weighing parts, and keeping the bins full. Plaintiff had stated that the injury occurred on September 1, 2001 but upon reviewing the medical records for the first time at mediation, plaintiff realized it was September 4, 2001 when she had hurt her back and gone to the emergency room.
3. Plaintiff worked the 7:00 a.m. to 3:30 p.m. shift. Plaintiff said she was called in early on September 4, 2001, and began working at 5:00 a.m. after her supervisor called her to come in early to get the line ready for operation.
4. Plaintiff was doing her duties when she picked up a box of parts that weighed 50 to 60 pounds. Plaintiff felt a sharp pain go down her right side and had low back pain the remainder of the day. Plaintiff stopped and rested and then continued to work with the pain in her lower back.
5. Plaintiff waited for her supervisor, Nancy Dyer, told Ms. Dyer what happened, and clocked out around 11:30 a.m. Plaintiff indicated she was going to the doctor and was told that was approved by her supervisor. Ms. Dyer did not mention filing an accident report and plaintiff did not know if one was completed. Her supervisor did not direct plaintiff to see any particular physician.
6. Ms. Dyer testified that plaintiff told her about an incident at home in which she hurt her back lifting children's furniture prior to September 4, 2001, which was corroborated by plaintiff's testimony. Plaintiff went on to testify that she told Ms. Dyer that she did not know whether it was lifting the box at work or the furniture at home that caused the pain in her back. Plaintiff stated that she moved a child's bed and that her back was sore for a couple days, but she did not seek medical treatment.
7. Plaintiff went to Rutherford Hospital complaining of left lower back pain on September 4, 2001. The emergency room registration has "work related" circled to indicate the circumstances under which plaintiff's pain occurred. The emergency room physician diagnosed plaintiff with a pulled muscle and recommended plaintiff avoid lifting or bending for one week. Plaintiff was also given medication and told to apply heat on the problem area.
8. Plaintiff returned to work the next day, but indicated that her back was still sore. The pain continued to get worse, with pain radiating down her left leg and hip. Plaintiff also began having headaches, but continued to work. Plaintiff told some co-workers and her supervisor that her pain was getting worse and had begun to affect her sleep.
9. Defendants did not direct plaintiff to a physician, so plaintiff chose Dr. Robert Ralph out of the phonebook because he was taking new patients. Plaintiff saw Dr. Ralph on October 8, 2001 and told him about her job duties, including having to move boxes that weigh 60 to 70 pounds. Dr. Ralph's notes indicate plaintiff "knows of no injury to her back or leg." Plaintiff testified that she told Dr. Ralph about lifting the box at work and she did not know why the incident was not in his notes. Dr. Ralph gave her an injection in the hip that helped for four or five hours and then the pain returned. Dr. Ralph advised plaintiff to rest for several days and return to his office, which she did on October 11, 2001. Plaintiff stated the pain was now down into the left thigh and foot. Dr. Ralph took her out of work and scheduled an MRI.
10. An October 16, 2001 MRI revealed disk protrusions at L4-L5 and L5-S1. Dr. Ralph referred plaintiff to Dr. John E. Davis at Mid-Carolina Orthopaedic Clinic.
Dr. Davis noted plaintiff walked bent over, had marked limitation of motion in her back, and had positive straight leg raising on both sides. Dr. Davis recommended a discectomy for a disk herniation at L4-L5, which was done on November 15, 2001.
11. Dr. Davis' notes indicate onset of pain unrelated to any activity, but plaintiff testified that she told him about picking up the box at work. Plaintiff testified that the pain in her back was never as bad as when she lifted the box at work. She further testified that she had back pain a few times in the past, but had never had the pain go down into her leg like she it did a few days after lifting the box at work. Pain moved into plaintiff's low back and hip on September 4, 2001. Dr. Davis testified that it was not unusual for patients to come in with pain several days after an incident, because there "isn't always an immediate connection."
12. Plaintiff was disabled and unable to work from October 18, 2001 through January 7, 2002, when Dr. Davis released her to return to work. Plaintiff returned to Dr. Davis on January 14, 2002 and was taken out of work through January 29, 2002.
13. Plaintiff worked one day of light duty on January 30, 2002. Plaintiff testified she was informed by defendants that she was not to return to work until Dr. Davis had released her without restrictions.
14. On February 4, 2002, Dr. Davis recommended that plaintiff lift no more than 20 to 30 pounds and also recommended that she might need to look for different employment if she was unable to work at this level. Plaintiff did not return to work for defendants since she was never released without restrictions.
15. When he last saw plaintiff on March 13, 2002, Dr. Davis commented that plaintiff was doing reasonably well but had chosen not to go back to work. He stated that if plaintiff felt that the job with defendants was too hard for her, he recommended that she find other employment. He released her to return as needed. Plaintiff has not returned to Dr. Davis since that date.
16. Dr. Davis recommended permanent restrictions of limited lifting, bending and stooping and lifting of no more than 40 pounds. Dr. Davis assigned plaintiff a 10% permanent impairment to her back based on her surgery and recurrent symptoms.
17. Dr. Davis testified, and the Full Commission finds as fact, that the lifting incident at work could have significantly contributed to the disc disease at L4-L5, causing plaintiff to become symptomatic, unable to work, and in need of surgery. Dr. Ralph agreed that the lifting incident could have caused the herniated disc at L4-L5.
18. The Deputy Commissioner, who had an opportunity to observe plaintiff and hear her testimony, found her to be credible. Plaintiff was truthful with her supervisor by telling her about lifting furniture at home and lifting the box at work. Plaintiff indicated she was not sure what caused her problems, other than the fact that the pain was worse and went into her hip after the lifting incident at work. The Full Commission finds plaintiff `s testimony to be credible and gives greater weight to plaintiff's testimony than to that of Ms. Dyer.
19. Defendants claim plaintiff is not entitled to benefits for failure to report the incident as required by N.C. Gen. Stat. §97-22. However, plaintiff testified, and the Commission finds, that she did tell her supervisor, Ms. Dyer, that she had lifted a box and had back pain. Further, plaintiff was allowed to leave work on September 4, 2001 to go to the hospital. Plaintiff testified that she told Ms. Dyer she was not sure if it was the lifting furniture at home or the box at work that caused back pain. Defendants were on notice of the lifting incident at work, and the fact that an accident report was not completed cannot be held against plaintiff. Defendants put forth no evidence of any prejudice caused by plaintiff's alleged failure to report.
20. As the result of the compensable injury by accident, plaintiff was temporarily totally disabled from any employment from October 8, 2001 until March 13, 2002. No doctor has taken plaintiff out of work since her last medical treatment by Dr. Davis on March 13, 2002. Plaintiff has not looked for work since March 13, 2002.
21. Based on the Form 22 submitted in this matter, plaintiff's average weekly wage is $482.65, yielding a compensation rate of $321.79.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
Plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendants in that she sustained a specific traumatic incident of the work assigned on September 4, 2001. N.C. Gen. Stat. § 97-2(6).
Plaintiff has the burden of providing disability, defined as a loss of wage earning capacity. Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). Plaintiff can satisfy her burden of proving disability in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of working in any employment; (2) the production of evidence that she is capable of some work, but that she has, after reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than she earned prior to her injury. Id.
2. In the case before us, the greater weight of the evidence of record fails to show that plaintiff was disabled after she was last released by Dr. Davis on March 13, 2002. Plaintiff has not met her burden to show that she was unable to obtain employment after a reasonable effort or that it was futile for her to seek employment because of other factors. She was capable of some work and no doctor took her out of work. N.C. Gen. Stat. § 97-2(9); Russell v. Lowes Product Distribution, supra.
3. As a result of her compensable injury, plaintiff is entitled to temporary total disability benefits at the rate of $321.74 per week from October 8, 2001 through March 13, 2002. N.C. Gen. Stat. § 97-29. Defendants are entitled to a credit for any wages paid to plaintiff during this period.
4. Plaintiff is entitled to permanent partial disability benefits for the 10% permanent functional impairment to her back. N.C. Gen. Stat. § 97-31(23).
5. Plaintiff is entitled to have defendants pay for medical expenses incurred by plaintiff as a result of her compensable injury, as may be required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits at the rate of $321.74 per week for October 8, 2001 through March 13, 2002. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee awarded below and subject to a credit for any wages paid plaintiff during this period.
2. Defendants shall pay plaintiff permanent partial disability benefits for the 10% impairment rating to her back at the rate of $321.74 per week for 30 weeks. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee awarded below.
3. Defendants shall pay all medical expenses incurred by plaintiff as the result of her compensable injury when bills for the same have been submitted to the Industrial Commission pursuant to approved Industrial Commission procedures.
4. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff is hereby approved to be deducted from the lump sum due plaintiff and shall be paid directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This the 23rd day of June, 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION
 S/_______________ DIANNE C. SELLERS COMMISSIONER
LKM/kjd